1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

# United States District Courts
## Southern District of New York

*Yaya Jallow*,
  Plaintiff,
     v.
*City of New York,*
  Defendant.

Case No. 1:20-CV-06260

3rd Amended Complaint

*Judge Hon. Lorna G. Schofield*

**Complaint For Declaratory & Injunctive Relief**

### *I. Introduction*

1. The Plaintiff, Yaya Jallow, in proper person is filing this complaint and respectfully requesting a declaratory and injunctive relief against the aforementioned Defendant for violation of The Plaintiff's 5th and 14th Amendment Rights as well as New York Penal Law § 135.30 and 18 U.S.C. § 1201 through their actions of forcibly detaining and confining The Plaintiff against his will and consent. The Plaintiff alleges the following:

   a) After being falsely detained by the City of New York Police Department Transit Division 11 on May 9th 2019, by Officer John Doe #1-#5 & Jane Doe #1, and being tailed by the City of New York Police Department personnel for the remainder of the summer The Plaintiff was the unfortunate victim of multiple thefts and the ensuing cover-up attempts which resulted in the unfortunate forcible confinement of The Plaintiff against his will and consent at Jacobi Medical Center, located at *1400 Pelham Parkway South, The Bronx, New York 10461*, for 21 hours on *August 9th 2019*, 4 days after the last attempt at stealing from The Plaintiff.

   b) After experiencing that unfortunate experience The Plaintiff began the notification phase of his legal endeavors and started informally informing all involved parties of the pending nature of several litigations against them. After being informed, several of the involved parties felt the need to further discredit and slander The Plaintiff by once again getting The Plaintiff forcibly confined against his will in an apparent attempt to deprive him of his due process right, further their discrimination scheme, and slander & discredit him.

   c) On August 30th 2019 one of those parties felt the need to call The Defendant's personnel to help them facilitate and advance along their plans. Despite not having no valid nor legitimate reason to, the parties in question called The Defendant's personnel, Officer John Doe #6-#11 & Jane Doe #2, and despite having a normal casual conversation with The Defendant's personnel and not displaying any reason to warrant it The Defendant's personnel sought it fit and within their authority all while showing a complete disregard for The Plaintiff's multiple objections of being forcible confined, transported, and admitted to the *North Bronx Medical Center* located at *3424 Kossuth Avenue, The Bronx, New York 10467*, at this point the 2nd time in less than 3 weeks by the same *City of New York Police Department 52 Precinct*, located at *3016 Webster Ave, The Bronx, New York 10467* in what can only be described as blatant entrapment schemes regardless of the cognitive awareness of the participants in each events, from the guilty parties that

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

   fraudulently called the Defendant's personnel to the Officers that responded to the incident and their choices of actions thereof.
d) As a direct & indirect consequence of The Defendant's personnel's, Officer John Doe #1-13 & Jane Doe #1-2, all unknown at the moment due to The Defendant's legal department's desire to ignore The Plaintiff's FOIRs, actions The Plaintiff was transferred from his, at the time, designated shelter to a "disciplinary shelter" in a last ditch attempt by several of those other aforementioned parties to force The Plaintiff into silence by attempting to strip him of his due process right through hindrance, slander, and obstructionism.

## II. Claim

2. *The Plaintiff was discriminated on the basis of his race, color, sex, and national origin, with The Defendant's personnel's perception of it being more relevant than the actual fact of it due to those personnel's choice to operate under the false hoax & belief that The Plaintiff had any mental disorder that would warrant a blatantly overt violation of The Plaintiff's Civil & Constitutional Amendment Rights when those personnel chose to detain, transport, charge, and forcible admit The Plaintiff after attempting to entrap and felonize The Plaintiff on multiple occasions.*
   a) As a direct consequence of the events outlined in this and subsequential complaints, The Plaintiff was forces to endure through the stigmatization of having a mental disorder along with the flagrant shows of racial discrimination that The Plaintiff was already the unfortunate victim of, as detailed in this complaint when The Plaintiff was always automatically seen as the wrong or aggressive party, a stigmatization associated with The Plaintiff's race. After the events of this complaint The Plaintiff was the unfortunate victim of several statute & civil liberty violations that The Plaintiff would argue caused **"actual general harm"** due to the false diagnoses only existence being that of a scapegoat for the actual discrimination and harassment The Plaintiff was experiencing from the countless unprovoked, unlawful, fraudulent, and unnecessary encounters The Plaintiff had with The Defendant's Officers that felt justified in their flagrant shows of unprofessionalism and abuse of authority under the predication of said diagnosis and/or information that they were provided with, either from dispatch or aforementioned guilty parties, that resulted in the actual, tangible, & covert harm of and to The Plaintiff's livelihood, at the least, and would have resulted in his possible death, at the most as showcased in countless news articles throughout the county throughout the years depicting The Plaintiff's race's encounters with "The Police".
   b) The Plaintiff is bringing this claim for a Civil Rights & 5th & 14th Amendment violation due to The Defendant's personnel's willful actions, regardless of awareness, of attempting to disenfranchise and destitute The Plaintiff either as a mistake; part of a elaborate obstruction of justice scheme; a show of complete disregard for The Plaintiff's life and/or livelihood; or as a show of general corruption / abuse of authority. With any of these options alone invalidating any possible good faith defense The Defendant's personnel's would possible have.

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

### III. Jurisdiction & Venue

3. The Plaintiff brings this action pursuant to 42 U.S.C. §1983 for violations of The Plaintiff's Rights under the Fifth and Fourteenth Amendments of the United States Constitution as well as The Civil Rights Act.
4. The case presents a federal question within This Court's jurisdiction under Article III of the United States Constitution and 28 U.S.C. §1331, §1343, §1332.
   a) *Question: "Did The Defendant's personnel knowingly on multiple occasion deprive The Plaintiff of his right to liberty & ignore his multiple objections of being confined against his will?"*
   b) *"Was it due to his protected characteristics of race, color, religion, sex, national origin, and/or familial status?"*
5. Declaratory relief is authorized by 28 U.S.C. §2201 and §2202.
6. Injunctive relief is authorized by 27 U.S.C §122a.
7. Venue is proper in this Court under 28 U.S.C. §1391 because one or both parties reside in this district and a substantial part of the events given rise to this claim occurred in this district.
8. The Plaintiff does not seek a jury trial and designates Manhattan as the place for trial.
9. *Subject Matter Jurisdiction*
   a) In The First Order to Amend the Court sought to dismiss on the basis of a lack of subject matter jurisdiction. The Plaintiff argues The following:
      i. "procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property"
      ii. Due to The Plaintiff's desire to have his claims heard before a fair and impartial judiciary and The Plaintiff's unfortunate history with the New York State Unified Court System The Plaintiff sought it only fit for this case to be heard in United States District Courts.
   b) In The Second Order from the Court, the Court once again sought to bring up subject-matter jurisdiction issues, even referencing *Fed. R. Civ. P. 8*, bringing up 4 prime points to justify their believe to dismiss under lack of jurisdiction. It is The Plaintiff's believe that these 4 points in fact actually further The Plaintiff's claims and falls nothing short of positively confirming the 2 questions The Plaintiff invoked in bringing this complaint before this Court. The Plaintiff would sum these 4 Points as: *defenses, merit, immunity, & 18 U.S.C §1038(a)*.
      i. Defenses
         1. In The Plaintiff's eyes the only possible defense would be a *denial/unknown defense* due to lack of knowledge or information. It is The Plaintiff's belief through his painstaking work over the last year and before of attempting to inform the proper channels and The Defendant's personnel of the blatant nature of those personnel's actions, schemes, acts, or omission it would be impossible for those involved and those responsible for their oversight not being able to know of or be able to deny their knowledge of The Plaintiff's statements and claims at this time of writing, November 2020, during the occurrence of the events outline in this complaint and anytime after, with The Plaintiff being able to assert to their knowledge of the facts beforehand, as all the presented exhibits and evidence would indicate.

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

- ii. Merit
    1. The Court asserts it's belief that The Plaintiff's claims ares merit less and baseless. It is The Plaintiff's belief that the claims outlined detail a blatant show of abuse of authority, at every conceivable level possible, at the least and willful criminal corruption at the most.
    2. The Court also stated that it is out of The Plaintiff's scope to bring or outline criminal & lower statutes. The Plaintiff would argue that due to The Plaintiff's whole last year attempting to bring to attention to the proper and countless law enforcement entities all the illegal acts that were occurring to and around The Plaintiff, to no avail, to only have those very same entities & their personnel attempt every conceivable option to willfully & deliberately condone, further, and even possibly part-taking in the very same illegal acts, as mention in The Plaintiff's countless complaints in The United States Southern & Eastern Districts of New York as well as the New York State Unified Court System.
    3. As mentioned The Plaintiff fails to see how any of his claims in this and following complaints would be merit less or out of scope of the United States District Courts' jurisdiction.
    4. It is The Plaintiff's belief that in the name of what the color of the law stands for as well as the United States it would be nothing short of poor decision making skills for the Court, or any, to deem any of what The Plaintiff's claim state as out of their scope and/or jurisdiction or that this claim can't be adjudicated.
- iii. Immunity
    1. It is The Plaintiff's belief that The Defendant's personnel willfully acted with the idea of their immunity in mind, something that brings into question the whole point of the immunity and it's apparent violation of anti-authoritarian & abuse of authority statues, on the face of their apparent uses and interpretations.
    2. The Plaintiff would also like to bring up the question whether bringing immunity into play shows the level of malicious intent and culpability The Defendant's personnel's acted with when they performed the actions they did and chose to not listen to, let alone even acknowledging The Plaintiff's countless objections.
- iv. Terrorist & Criminal Hoaxes (18  U.S.C §1038(a))
    1. Everything outlined & detailed in The Plaintiff's complaints outlines a terrorism campaign with the very facts alleged in this complaints showing the guilty parties active participation in the furtherance of this hoax & terrorism campaign sponsored by The Defendant's personnel's overt and covert acts.  Something The Plaintiff would assume that *18 U.S.C §1038(a)* makes illegal and criminal.

10. *Statement of Claim*
    a) The Plaintiff was willfully and intentionally racially profiled, assumed to be a criminal, assumed guilty, and treated accordingly. The Defendant's Officers John Doe #1-#5 & #6-#12 & Jane Doe #2 sought it fit to forcibly admit The Plaintiff and force The Plaintiff to endure all the stigmatization that comes with it as part of  what seems like an elaborate plan to kick The Plaintiff out of the New York City shelter system and leave him disenfranchised and destitute outside on the streets to die after their fraudulent suicide by cop murder attempts failed.

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

- b) The Plaintiff believes that the reliefs seeked is just and fair compensation for all the unfortunate events the Defendant's personnel forced The Plaintiff to endure through their direct and indirect actions and their deliberate discrimination of The Plaintiff based on their false assumptions.
- c) The Court denied The Plaintiff's amended complaints under the basis that it is futile, unfounded, out of scope, & unjustified while also claiming subject matter jurisdiction / municipal / sovereignty immunity.
    - i. The Plaintiff finds this partial-order denial to be confusing due to it once again seeming that the Court is attempting to readdress the same question while ignoring the answer provided in the amended complaint while approving the exhibit packet that also answered the same question of scope.
    - ii. The Plaintiff would also move to assert that all The Defendant's personnel's actions were done deliberately and with the proven intent of discrediting, hindering, slandering, and obstructing The Plaintiff's due process as well as the right to it as The Plaintiff feels the countless exhibits and evidence would covertly and overtly point to.
        1. Through The Defendant's personnel's actions to influence, obstruct, & hinder The Plaintiff and their countless intentional covert & overt actions, words, and choices.
        2. It is not any of us, let alone The Plaintiff, that 100% can prove one's true intentions other than that person and their intentional first actions, an assumption that is not true but more often that not correct, through their own actions and when given multiple chances at redemption it is safe to come to a reasonable conclusion of The Defendant's personnel's true actions and intents.
        3. We can safely arrive at these conclusions by the willful actions time and time again that those aforementioned personnel & guilty parties chose.

### IV. Causes of Action

*Violation of 5th & 14th Amendment & Civil Rights (42 U.S.C. §1983; 18 U.S.C. §241, §242, & §249)*

11. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
12. The Fifth and Fourteenth Amendment prohibits any official of government from depriving any person of life, liberty, and/or property without due process.
13. During every interaction The Plaintiff had with The Defendant's personnel, Officers John Doe #1-#11 & Jane Doe #1-2, he would make sure to verbally & visually communicate with The Defendant's personnel of his refusal to be detained and forcible sent against his will to where ever they were taking him and despite not having a legitimate nor valid reason to and being provided with multiple physical exhibits to invalidate their actions The Defendant's personnel, in what The Plaintiff feels was done under color of the law, deemed it necessary and within their authority to deprive The Plaintiff of his right and/or privilege to walk away and then forcibly transporting & confining him against his will.
14. Due to all active participates being Officers, Paramedics, Employees, & Personnel of The Defendant's agencies and The Defendant being part of a governmental body that has on numerous occasions wronged and disenfranchised The Plaintiff and as such The Plaintiff deems this Court the only proper and just venue for adjudication as well as the reliefs he seeks.
15. Pursuant to the United States Constitution and under it's Amendments noted and in accordance with all relevant rules, regulations, codes, practices, & beliefs The Plaintiff feels he has met all requirements to bring this litigation against The Defendant and seek proper & adequate due process, adjudication, and relief for his grievances against The Defendant in this Court.

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

### *False Information & Hoaxes (18 U.S.C. §1038)*

16. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
17. Despite providing The City of New York Police Department personnel with accurate and proper information about what was occurring, every single time, the Officers would instead decide to listen to the lying aggressors, believing their false statements, and kidnapping The Plaintiff, due to doing it against his consent and will and in the face of his countless refusals all under false, arbitrary, and illegal circumstances.
18. The City of New York Police Department personnel would then proceed to forcible admit The Plaintiff to the hospital on multiple occasions and directly due to The Defendant's personnel's actions The Plaintiff would receive two false diagnoses, all false, untrue, unfounded, & unsupported and proof of a deliberate "system of corruption" that enables, condones, and prompts murder and/or reckless endagerment.
19. Due to these events, The Plaintiff believes, The Plaintiff was blatantly and willfully subjected to the stigmatization associated with having a mental disorder and subjected to dehumanizing and blatant harassment and discrimination disguised as mental disorder harassment, in an immature attempt to pass off illegal conduct, behaviors, and acts under the ruse of legally and criminalized reasons due to all guilty participants knowledge of the fact that The Plaintiff lacked any mental disorder.
20. The City of New York Police Department personnel and those guilty parties that fraudulently called them actions' fit the pattern of a fraudulently suicide by cop murder attempt and their behaviors before, during, and after show ample culpability and malice to show full awareness and premeditation.

### *Kidnapping (18 U.S.C. §1201)*

21. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
22. The Plaintiff was restrained and transported multiple times to locations against his consent and will and held in capacity without valid nor legitimate probable cause or reason.
23. Despite The Plaintiff's multiple and blatant refusals of being detained and forcible transported against his will and consent and multiple attempts at informing the City of New York Police Department personnel of what was actually occurring the City of New York Police Department personnel felt the need to unnecessarily restraint, detain, arrest, transport, and even charge The Plaintiff, all under deliberately fraudulently and unjustifiable reasons.

### *Unlawful Imprisonment (New York Penal Law §135.10)*

24. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
25. The Plaintiff would reiterate the previous two points (*22 & 23*) from the above section whilst for this cause under New York State statute.
26. Due to The Plaintiff's history of being a victim of obstruction of justice at the hands of the New York State Unified Court System The Plaintiff would also seek to invoke New York State statute.

### *Amount In Controversy (28 U.S.C. §1332)*

27. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
28. The amount in monetary relief requested meets with the required threshold for this Court and the actual amount in damages surpasses the maximum of most courts this litigation would also fall under the jurisdiction of.

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

### *Pattern of Practice(42 U.S.C §14141)*

29. The Plaintiff restates and reincorporates all previous paragraphs of this complaint.
30. Through all the forthcoming events that will be outlined in Section VI The Plaintiff was willfully, deliberately, and knowingly discriminated against on the basis of his race, color, national origin, and sex. Due to the countless Officers' choices to intentionally and deliberately not believe The Plaintiff and deliberately turn into the aggressors.
    a) The Court in their 2nd Order brought up that this matter is only applicable to juveniles and although true The Plaintiff would argue that due to recent partial-reversal of course on felony disenfranchisement in the State of Florida The Plaintiff feels there is just cause to revisit the referenced statutes for revision.
    b) Despite it's application to only juvenile offenders on it's face it is applicable to all citizens.

### *V. Parties*

31. The Plaintiff, Yaya Jallow, (hereinafter "The Plaintiff", "Plaintiff") is an individual who is currently a resident of the State of New York & the City of New York.
32. The Defendant, City of New York, (hereinafter "NYPD", "The New York City Police Department", "Police Department", "Police", "The Police", "Officers," "Officer", "The Officers", "FDNY", "The New York City Fire Department", "Fire Department", "EMT", "Medics", "Paramedic(s)"): is the legal representative entity of the following agencies:
    a) City of New York Police Department: a government agency organized and existing by virtue of the laws of the City of New York. It is currently in charge of policing and enforcing through C.P.R while maintaining law and order in the City of New York.
    b) Fire Department of the City of New York: a government agency organized and existing by virtue of the laws of the City of New York. It is currently in charge of emergency medical situations & fire suppression throughout the City of New York.

### *VI. Allegations of Facts*

33. After being falsely detained by The New York City Police Department MTA 11th Transit Division at the Fordham Road Subway station, located at **417 E Fordham Road, The Bronx, New York 10458**, and being questionably detained & charged The Plaintiff was tailed and followed by several unidentifiable City of New York Police Department's personnel and vehicles until ultimately climaxing in the forcible detention of The Plaintiff at Jacboi Medical Center, located at **1400 Pelham Parkway South, The Bronx, New York 10461**, against his will for 21 hours on August 9th 2019 under false pretenses and in the face of undoubtable evidence to the contrary and once again on August 30th 2019, for the 2nd time in less than 21 days, by unidentifiable City of New York Police Department 52nd Precinct Officers and unidentifiable Fire Department of the City of New York Paramedics.
    a) Around August 2019 after suffering for months, 3 months at that point, at the hands of The Staff at the shelter, operated in-conjunction by another one of The Defendant's agencies, The Plaintiff was staying at, along with being sold a defective cellular device (*see **Exhibit 2***) by one of his phone provider's authorized dealer. After being ripped off multiple times over the course of the summer of 2019 and having his cellular service, in a semi-signal jamming manner, questionably suspended for a couple of days following up to and afterwards on August 9th 2019, four days after paying his phone bill (*see **Exhibit 3***) and two days after his service was "questionable suspended" (*see **Exhibit 4***), The Plaintiff deiced enough was enough and he was going to return the favor to the store employees for all the amount of extra work (attempted trauma) they had caused him to endure.

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

b) After going to the store where The Plaintiff had bough the phone, located at **836 Dekalb Ave, Brooklyn, New York 11221**, which had possibly been tipped off to The Plaintiff's visit by his neighborhood store, located at **327 East Fordham Road, The Bronx, New York 10458**, after he had visited them and attempted to obtain a refund and was refused and told to go to the store he bought the phone at, and finding the store closed once again for a second consecutive day The Plaintiff headed back to his neighborhood store once again seeking a refund or a new device before heading to work.

  i. Once there the store employee refused to honor any of The Plaintiff's request and in turn The Plaintiff went on to inform the store employees of his intent to return the favor of them plain out harassing him to which the store employee told The Plaintiff to go ahead.

  ii. The Plaintiff informed the store employee that he was going to take everything off the hooks and place them on the floor even making sure to tell her that he wasn't going to damage anything, to which she gave consent to and with a complete disregard for The Plaintiff's statement.

  iii. The Store employee then told The Plaintiff to once again go ahead.

  iv. The Plaintiff once again stated what he was about to do to which the store employee once again gave him confirmation to go ahead.

  v. After receiving verbal and visual confirmation The Plaintiff then proceeded to go around the store and take everything off the hooks and place them on the floor and making sure not to damage anything. (*see* **Exhibit 19**)

  vi. At first the store employee didn't care and was even getting ready to pick up the products until second thought after looking The Plaintiff in the eye, changed her mind and decided to call The Police (*see* **Exhibit 5**). To which The Plaintiff made the effort of informing her that he hadn't done anything illegal nor inherently wrong, it was only them and that she could but she had no right nor reason to and she was really calling The Police on herself, for making a false police report.

  vii. After the City of New York Police Department Officers John Doe #1-#5 & Jane Doe #1 arrived The Plaintiff attempted to inform The Defendant's Police Officers of what was occurring regardless the City of New York Police Department personnel (Officers John Doe #1-5 & Jane Doe #1) were dismissive, even going so far as to attempt to side with the store employee and attempt to persuade The Plaintiff into thinking he had broken disorderly conduct laws to which The Plaintiff would rebuff ever attempt the City of New York Police Department Officer John Doe #1 would make to convince The Plaintiff into thinking he had broken a law, let alone any. The Officer John Doe would then deprive The Plaintiff of the ability to casually calmly walking away and go on to work. (**Exhibit 18**)

  viii. After several conversations with the City of New York Police Department Officer John Doe #1 deiced that they were going to send The Plaintiff to get an evaluation all to which The Plaintiff verbally, visually, and as semi-physically as possible in that situation objected to and plain out refused. Due to having to go to work around the same time and living a considerable distance away along with a desire to defuse the situation The Plaintiff did as the City of New York Police Department personnel asked and were telling him to do and waited with them until the **Fire Department of The City of New York Engine 48** / **Ladder 56** / **Division 7** arrived, around 30 minutes later (*see* **Exhibit 17**) despite being located within a 5 minute walk from the incident location at **2417 Webster Avenue, The Bronx, New York 10458**, even with the levels of traffic present that day. (**Exhibit 18**)

  ix. When the Fire Department of the City of New York personnel, Paramedic #1, arrived The Plaintiff once again reiterated his absolute denial and refusal of being taken to the hospital and had just waited to make sure to inform the City of New York Police Department personnel that he hadn't broken any laws nor merchandise and that they were just calling the

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

    Fire Department of the City of New York personnel because they knew they shouldn't arrest him. After having a conversation with The Plaintiff which ultimately was pointless due to the City of New York Police Department & Fire Department of the City of New York personnel's' (Officers John Doe #1-5 & Jane Doe #1 & Paramedic #1) already perceived belief that The Plaintiff was in the wrong.

- **x.** Despite all of The Plaintiff's attempts to avoid the situation The Plaintiff was forcible sent to Jacobi Medical Center where he was confined and held against his will for the following 21 hours and unfortunately released with a false & fraudulent diagnosis of **Psychosis** (*see **Exhibit 6***) despite not exhibiting any symptoms to warrant such a diagnosis.

c) After this unfortunate event The Plaintiff felt it was only natural to begin with legal proceedings against all involved parties. After being released The Plaintiff began the notification phase of his legal endeavors and began to file out a formal in-house grievance complaint (*see **Exhibit 7***) at the shelter he was staying at due to their possible involvement in The Plaintiff getting confined for the 21 hours instead of 2 hours as prescribed or a few minutes as The Plaintiff was lead to believe. After having his complaints/grievances ignored and only serving the purpose of informing those involved due to a desire to avoid formal litigation The Shelter Staff continued their retaliation campaign against The Plaintiff in what can only be summed up as a complete disregard for The Plaintiff's life.

- **i.** Around the week of ***August 25th - 31st 2019*** in what can only be described, as it seemed at the time and thereafter, as part of their retaliation campaign, the "***supervisory/retention/specialist*** staff" at the shelter held what can only be summarized as a strong-arm intimidation "***sit-down meeting***" with The Plaintiff where they attempted to infer to The Plaintiff that if he wanted to stay at BRC – Reaching New Heights men shelter, located at ***237 Landing Road, The Bronx, New York 10468***, he better stay quiet and let them do as they want. Once The Plaintiff communicated back that he would not be doing such a thing they began to allude to The Plaintiff if he didn't commit himself they would see to it.

- **ii.** On August 30th 2019, after the failed intimidation attempt the Shelter Staff began their daily harassment streak early in the morning by switching off the laundry machine after breakfast despite leaving it on all night, coincidentally the same day The Plaintiff had an interview, with the goal of once again annoying The Plaintiff. After attempting to do his laundry and noticing that the laundry machine was off The Plaintiff went downstairs to the reception desk and asked the Staff to turn the laundry machine back on due to him having just seen it on. After waiting an unnecessary amount of time The Plaintiff then went back downstairs to tell the Staff in no uncertain terms that he was frankly done dealing with all their nonsense and he wasn't going to tolerate it anymore nor had been and that they should stop pretending and leave him alone.

- **iii.** After that exchange The Plaintiff then went back upstairs and proceeded to unfortunately get ready to shower without doing his laundry when next thing he knew the door to the bathroom began to slowly ajar to which The Plaintiff responded by turning around and staring at the door. After opening the door a bit, a voice would announce themselves as the City of New York Police Department personnel and that they were there because they got a call. The Plaintiff responded by coming out of the bathroom and being escorted by the City of New York Police Department Officers, Officer John Doe #6-#11 & Officer Jane Doe #2, outside, after grabbing his shirt, and downstairs to the front of the building.

- **iv.** Whilst The Plaintiff was in front of the building the Shelter Staff inside would begin making what seemed like monkey antics all while pointing and laughing at The Plaintiff and Defendant's Officers in what seemed like a childish antics to agitate The Plaintiff into acting out in front of the City of New York Police Department Officers John Doe #6-#11 & Jane Doe #2 and hopefully getting killed. While standing outside The Plaintiff and the City of New York Police Department Officers John Doe #6-#7 would hold first a casual conversation

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

      about sports and then some small talk. During this time The Plaintiff would ask The Officers what they were doing to which they stated that they had received a call and due to the nature, which they would never devolve, of the call they were taking him to a hospital to which The Plaintiff would visually and verbally object multiple times to, regardless The Officers (Officer John Doe #6-#11 & Jane Doe #2) would state once again due to the nature of the call and internal policies the only option they had was to take him to the hospital. The Plaintiff would go on to object during the wait for the ambulance, during the drive there, and even before being admitted that he was not consenting to nor allowing his forcible confinement to the hospital, this time ***North Bronx Medical Center*** located at ***3424 Kossuth Ave, The Bronx, New York 10467*** (*see* ***Exhibit 15***).

- ***v.*** After once again begin forced to undergo an evaluation and once again receiving a false diagnosis (***Exhibit 16***). This time despite being held only for 2 hours The Plaintiff would go on to receive a diagnosis of ***Schizophrenia*** (*see* ***Exhibit 16***), a completely different mental disorder than the one he received on August 9th 2019 (*see* ***Exhibit 6***), 21 days earlier, which doesn't even share any underline correlation with the first diagnosis of ***Psychosis***.

    **d)** After being discharged The Plaintiff returned to the shelter and after having the information on his last discharge papers disclosed by the Staff he refused to even show them the paper to which the Staff responded to by once again calling the City of New York Police Department. The Plaintiff ignored them and went upstairs to grab some of his belongings. After the City of New York Police Department (Officer John Doe #12-#13) arrived despite calling them because he wouldn't show them his discharge papers the Staff somehow already knew what The Plaintiff's new diagnosis was and made sure to shout it out loud and clear for the City of New York Police Department Officers to hear when they arrived hoping once again the City of New York Police Department Officers would hurt and/or kill The Plaintiff.

- ***i.*** Despite once again not displaying any erratic behavior nor anything that would warrant it the City of New York Police Department Officers felt the need to once again side with The Staff and force The Plaintiff to leave.

34. *Municipal Liability*
   a) Due to The Shelter Staff's (guilty parties) desire to transfer The Plaintiff to their "disciplinary shelter" and in accordance with the ***City of New York Department of Homeland Services*** rules and regulations The Shelter Staff sought to depict The Plaintiff as mentally unstable to make their transfer "***legitimate***" and in accordance with the rules and regulations set forth by the ***City of New York Department of Homeland Services***.
   b) According to the unidentifiable ***City of New York Police Department Officers John Doe #6*** as The Plaintiff was told by him, due to the nature of the call and their apparent internal policies and practice the only option the ***City of New York Police Department Officer John Doe #6*** and his fellow officers (***John Does #6-#11 & Jane Doe #2)*** had was to forcibly admit The Plaintiff.
   c) Due to the gross illegality of the conducts outlined in this complaint it is The Plaintiff's belief that sovereign-immunity should be negated due to the blatant and willful shows of abuse of authority / power / position due to the covert natures of The Defendant's personnel's actions, withstanding actual cognitive intent.

35. *Personal Involvement*
   a) During the course of the events listed and afterwards The Plaintiff would attempt to obtain the personal information of the individuals for the incident that occurred but time and time again The Defendant's personnel (***law department***) would make every conceivable attempt to hinder and block The Plaintiff's requests. The Plaintiff has sent countless FOIL request as well as emails pertaining and regarding the retrieval of such information only to be stone-walled at every conceivable possible chance.

36. *2nd Order Response*
   a) In The 2nd Order from the Court, dated ***November 25th 2020***, the Court issued an order stating

1:20-CV-06260 (LGS) – Yaya Jallow v. City of New York - Judge Hon. Lorna G. Schofield

that false information and any byproduct or "intended/unintended" consequences of it or it results in doesn't **cause or count as actual harm** along with several attempts at stating that no actual criminality occurred nor were any statutes actually violated, the Court also attempted to state that everything claimed was out of their scope.

b) The Plaintiff would move to state that all the subsequently complaints The Plaintiff has filed in the Southern & Eastern Districts of New York along with the New York State Unified Court System would qualify as the aforementioned *"general harm"* the Court felt doesn't qualify but is merited enough to warrant a complaint. It isn't without confidence when The Plaintiff states that the events outlined in this complaint were actual harm due to the fictitious nation of the events that occurred and it's sole and purposeful existence is to act as slanderous and defamous events towards The Plaintiff's overall character and it's apparent existence as a plausible excuse to sanction and further the discrimination campaign that was already occurring when the alleged events occurred and it acting as a *"cop-out"*.

  i. The Plaintiff would give the example that if someone didn't want to hire The Plaintiff, not due to his lack of skill but rather due to say race, sex, or their perception of it they could use this blatant fictitious events as an legal excuse all way providing The Plaintiff with an arbitrary reason, regardless of the credible nation of events' occurrence or existence. If this was to go on forever than The Plaintiff would be unable to provide for himself and most likely, like any other reasonable person, starve to death. Something The Plaintiff would describe as physical mortal harm as a direct result of the events outlined in this complaint.

c) Due to The Plaintiff's year long attempt at notifying the proper law enforcement channels from the **Public Integrity Bureau** inside the **New York State Attorney's Office** to the **FBI's New York Office** and due to the apparent choice of those very enforcers to apparently do nothing or do the wrong thing, the same as The Defendant's personnel, it would be possible, along the same lines as a citizen arrest, for a citizen prosecution to be warranted, with special judiciary jurisdiction if need be.

  i. It is The Plaintiff's belief that if a citizen arrest is lawful and permitted without it being kidnapping or unlawful imprisonment than The Plaintiff beliefs that all his relief should be fulfilled, and unlike a genie, as is.

### *VII. Request For Relief*

37. Wherefore, The Plaintiff seeks the following reliefs:
    a) Awarding The Plaintiff a total monetary relief of ***$310,545:***
        i. Legal Cost: ***127,545***
            1. Case Research / Prep: ***126,720***
            2. Case Print-Outs: ***175***
            3. Litigation Cost/Fees: ***650***
        ii. Compensation: ***183,000***
            1. Hospital Bills: ***8,000***
            2. Hardship Pain & Suffering***: 25,000***
            3. Loss Economical Opportunities: ***50,000***
                1. Wages: ***25,000***
                2. Potential: ***25,000***
            4. Hardship, Mental, & Emotional Distress***: 100,000***
        iii. The Plaintiff believes the monetary amount outlined above is merited due to the facts outline and detailed in this complaint, and the summary judgment, having a direct and consequential affect on The Plaintiff and his life, liberty, and livelihood.
    b) A judgment pursuant to 28 U.S.C. §2201 & §1343 stating that The Defendant's agencies' personnel

violated The Plaintiff's Fifth & Fourteenth Amendments & Civil Rights by depriving The Plaintiff of his liberty & livelihood through their actions in blatant willful ignorance and refusal of The Plaintiff's multiple objections and in the face of undoubted concert evidence in The Plaintiff's favor.

c) Admission of Guilt & Statements of Apologies from The Defendant's personnel.
d) Such other reliefs as this Court may deem just and proper.

### VIII. Exhibits List

**Exhibit 01:** Stolen Wallet Police Report (July 26th 2019)
**Exhibit 02:** Cricket Device Purchase (July 18th 2019)
**Exhibit 03:** Cricket Wireless Bill (August 5th 2019)
**Exhibit 04:** Network Service Refusal Screenshots
**Exhibit 05:** Cricket Wireless 9-11 Sprint Report (August 9th 2019)*
**Exhibit 06:** Jacobi Medical Center Discharge Papers (August 9th 2019)
**Exhibit 07:** BRC Formal Grievance Form (August 10th 2019)*
**Exhibit 08:** Bronx Office of the Ombudsman Email (August 21st 2019)
**Exhibit 09:** Bronx Office of the Ombudsman Email Response (August 22nd 2019)
**Exhibit 10:** Bronx Office of the Ombudsman Email Response (Link)
**Exhibit 11:** BRC "Psychosocial" Evaluation Forgery Attempt #1 (August 26th 2019)
**Exhibit 12:** BRC "Psychosocial" Evaluation Forgery Attempt #2 (August 27th 2019)
**Exhibit 13:** BRC Corporate Email (August 28th 2019)*
**Exhibit 14:** Transfer To Kingsboro (August 27th 2019)*
**Exhibit 15:** North Bronx Admission Tag (August 30th 2019)
**Exhibit 16:** North Bronx Discharge Papers (August 30th 2019)*
**Exhibit 17:** FDNY/NYPD Records Request (Lack of Proof of Identity)*
**Exhibit 18:** Cricket Wireless Store Body-Cam Footage
**Exhibit 19:** Cricket Wireless Store Body-Cam Footage Screenshots
**Exhibit 20:** DHS Rules & Regulations (Client Responsibility)
**Exhibit 21:** DHS Rules & Regulations (What To Expect)
**Exhibit 22:** City of New York Police Department FOIR #1
**Exhibit 23:** City of New York Police Department FOIR #2
**Exhibit 24:** City of New York Police Department FOIR #3
**Exhibit 25:** City of New York Police Department FOIR #3 Response
**Exhibit 26:** City of New York (Law Department) FOIR List
**Exhibit 27:** May 9th 2019 FOIRs Attempts*
**Exhibit 28:** Transit Adjudication Bureau False Arrest Judgment
**Exhibit 29:** Office of Comptroller Claim (August 30th 2020)*
**Exhibit 30:** City of New York Department of Homeless Services Racist Paper-Trail*

*: notes

### Notarization

I, **Yaya Jallow**, swear and affirm that I have read the foregoing packet and know the contents thereof: that same is true to the best of my own knowledge, except as to the matter here stated to be alleged upon information, and as to these matters I believe them to be true.

Date: *12/08/2020*                                                                                                           /s/Yaya Jallow
                                                                                                                                     Yaya Jallow
*The Plaintiff, pro se • yjallow96@outlook.com • (718) 200-5369*
#312, 312 Powell Street, Brownsville, New York 11212