UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                            :
YAYA JALLOW,                                         :
                                                  Plaintiff,    :          20 Civ. 6260 (LGS)
                                                                    :
                -against-                          :          **OPINION AND ORDER**
                                                                    :
THE CITY OF NEW YORK,                    :
                                              Defendant.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Pro se Plaintiff Yaya Jallow brings this action against Defendant the City of New York (the "City") under 42 U.S.C. §§ 1981, 1983, the Civil Rights Act and various state and municipal statutes based on four interactions with the New York Police Department ("NYPD") occurring between May 9 and August 30, 2019. Defendant moves for judgment on the pleadings, seeking dismissal of the Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(c). For the following reasons, Defendant's motion is granted.

**I.    BACKGROUND**

      The following facts are taken from the SAC and documents attached to it. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021). The facts are construed in the light most favorable to Plaintiff as the non-moving party and presumed to be true for the purpose of this motion. *Id.* at 299 n.1. The SAC focuses on four events that occurred on May 9, 2019, (the "May 9 Arrest"), August 9, 2019, (the "August 9 Incident") and two events on August 30, 2019, (the "August 30 Hospitalization Incident" and the "August 30 Post-Discharge Incident").

      **A.    The May 9 Arrest**

      On May 9, 2019, Plaintiff was falsely detained by the City of New York Police Department MTA Transit 11th Division at the Fordham Road Subway station in the Bronx. The

SAC does not elaborate on the circumstances, but an arrest report attached to the SAC states that Plaintiff was charged with criminal trespass in the third degree. Following his detention, Plaintiff noticed an increased police presence around him. Plaintiff subsequently spent three months at a shelter.

### B. The August 9 Incident

On August 9, 2019, Plaintiff went to a Cricket wireless store in Brooklyn to return a defective cell phone and discuss the suspension of cellular service. The employees at the store instructed Plaintiff to go to the Brooklyn store where he had purchased the phone, but that store was closed. When Plaintiff returned to the store in the Bronx, he "inform[ed] the store employees of his intent to return the favor of them plain out harassing him." The store employee told Plaintiff to "go ahead." Plaintiff told the employee that he was going to take all of the merchandise off the hooks and place it on the floor, but that he would not damage anything, and the employee again told Plaintiff to "go ahead." Plaintiff proceeded to do so. The employee then called the police. When the police came to the store, they were dismissive of Plaintiff, siding with the store employee and accused Plaintiff of disorderly conduct. Officer John Doe #7 did not allow Plaintiff to leave, and at some point the officers patted him down. The same officer informed Plaintiff that he would be sent for an evaluation, to which Plaintiff "verbally, visually and semi-physically as possible in that situation objected." Plaintiff waited with the police and when fire department personnel arrived, Plaintiff again refused to be taken to the hospital. Plaintiff was taken to Jacobi Medical Center, "where he was confined and imprisoned against his will" for twenty-one hours. Plaintiff was in danger in the hospital. He was diagnosed with psychosis, though Plaintiff contends this was a false diagnosis. Following his release, Plaintiff went to Reaching New Heights, a men's shelter. Plaintiff filed a grievance complaint

against the shelter "due to their possible involvement," and the shelter staff retaliated against Plaintiff for filing a complaint.

### C. The August 30 Hospitalization Incident

Some time between August 25 and 31, 2019, staff at the shelter told Plaintiff that, if he wanted to stay at the shelter, "he better stay quiet and let them do as they want" and "if he didn't commit himself they would see to it."  On the morning of August 30, 2019, shelter staff turned off the laundry machine to harass Plaintiff before a job interview.  Plaintiff asked that the laundry machine be turned back on and, after waiting for some time, told the staff "that he was frankly done dealing with all their nonsense and he wasn't going to tolerate it anymore . . . and that they should stop pretending and leave him alone."  Plaintiff went upstairs to shower.  Shortly thereafter, NYPD officers announced themselves and came into his room.  The officers escorted him downstairs, and one of them grabbed his shirt in the process.  Outside, the officers told Plaintiff that, due to the nature of the call they had received and "internal policies," they were going to take Plaintiff to a hospital.  Plaintiff objected several times.  Plaintiff was taken to North Bronx Medical Center and forced to undergo an evaluation.  Plaintiff was held for two hours.  He was diagnosed with schizophrenia, which he contends is a false diagnosis.

### D. The August 30 Post-Discharge Incident

Plaintiff was discharged from the North Bronx Medical Center, on the same day he was evaluated.  Upon returning to the shelter, Plaintiff refused to provide the staff with his discharge papers. In response, the staff called the police.  When the police arrived, the staff shouted that Plaintiff had been diagnosed with schizophrenia so that the police would hear.  The police sided with the staff and forced Plaintiff to leave the shelter.  Though it is not entirely clear, Plaintiff seems to have subsequently resided at another shelter, Kingboro's Men's Shelter.

### E.      Procedural History

The procedural history relevant to the filing of the SAC, which is at issue on this motion, follows.  On August 7, 2020, Plaintiff filed suit against the City of New York Police Department and the Fire Department of the City of New York.  Because the NYPD and FDNY are not suable entities, the complaint was construed as asserting claims against the City of New York.  Plaintiff was granted leave to amend to add detail to his claims and was instructed that unknown individual defendants could be named as "John Doe" or "Jane Doe."  On September 2, 2020, Plaintiff filed the First Amended Complaint (the "FAC") against the City of New York.  Between September 2 and October 19, 2020, Plaintiff filed three motions to amend the exhibits to the FAC and one motion to amend the FAC to bring causes of action under four criminal statutes.  Plaintiff was granted leave to amend the exhibits but not the FAC, on the ground that any amendment would be futile.  Plaintiff filed a second motion to amend the FAC on November 5, 2020, without attaching the proposed complaint.  The motion was denied on October 8, 2020, and Plaintiff was directed to file a proposed amended complaint along with a letter request, if he wished to add new claims, allege new facts or modify any supporting exhibits.  On December 17, 2020, Plaintiff filed an amended complaint (rather than a proposed amended complaint) without leave to do so.  On January 11, 2021, the parties appeared at a conference before Magistrate Judge Sarah Netburn, and Plaintiff was granted leave to file an amended complaint.  Plaintiff filed the SAC, which is at issue on this motion, on January 28, 2021.  Defendant answered on March 15, 2021, and subsequently filed this motion for judgment on the pleadings.

## II.      LEGAL STANDARDS

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim."  *Lynch v. City of N.Y.,*

952 F.3d 67, 75 (2d Cir. 2020) (alteration in original) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 90 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

A pro se litigant's papers must be construed "liberally to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks omitted); *accord Greene v. Sampson*, No. 18 Civ. 6103, 2021 WL 355477, at *3 (S.D.N.Y. Feb. 2, 2021).

### III.   DISCUSSION

Liberally construed, the SAC asserts claims under 42 U.S.C. § 1981, § 1983, the Civil Rights Act and city and state statutes. For the reasons discussed below, the federal claims are dismissed, and the Court declines to exercise supplemental jurisdiction over the state and city claims.

A.     **Section 1983 Claim**

The SAC is construed to assert a § 1983 claim based on due process violations under the Fifth and Fourteenth Amendments arising from allegations of false arrest and warrantless seizure of Plaintiff.  For the following reasons, Defendant's motion to dismiss the § 1983 claim is granted.

Section 1983 "does not itself confer any substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Village of Freeport v. Barrella*, 814 F.3d 594, 600 n.8 (2d Cir. 2016) (internal quotation marks omitted).  To state a § 1983 claim, "a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (internal quotation mark omitted).  Under the Supreme Court decision, *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), "[m]unicipalities are liable under § 1983 only if the challenged conduct occurred "pursuant to a municipal policy or custom.'" *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021) (quoting *Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)).  "To establish a claim for *Monell* liability, [the plaintiff] must show that the [City] had "(1) an official policy or custom that (2) cause[d] [him] to be subjected to (3) a denial of a constitutional right." *Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 354, 354-55 (2d Cir. 2021).  To satisfy the requirement of showing an official policy or custom "a plaintiff may challenge an 'express rule or regulation,' or the plaintiff may allege that the challenged practice 'was so persistent or widespread as to constitute a custom or usage with the force of law' or that the facts 'imply the

constructive acquiescence of senior policy-making officials.'" *Green*, 16 F.4th at 1077 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)).

### 1.     May 9 Arrest and August 30 Post-Discharge Incident

The constitutional claim based on the May 9 Arrest and the August 30 Post-Discharge Incident is dismissed on two grounds, that the SAC does not allege that the officers acted pursuant to any municipal policy or custom and does not allege any underlying constitutional violation of false arrest.  The SAC does not explain how Plaintiff was "falsely detained" or any of the circumstances of the May 9 Arrest and is therefore insufficient to state a claim.  *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) ("[Courts] are not required to credit conclusory allegations or legal conclusions couched as factual allegations.") (internal quotation marks omitted).  Similarly, the allegations about the August 30, 2019, Post-Discharge Incident assert only that the officers forced Plaintiff to leave Reaching New Heights Men's Shelter and not that he was held against his will.  An officer's order to leave a certain area, even if accompanied by some physical contact, is not a seizure unless "the order is accompanied by the use of sufficient force intentionally to restrain a person and gain control of his movements." *Salmon v. Blesser*, 802 F.3d 249, 254 (2d Cir. 2015).

### 2.     The August 9 Incident and the August 30 Hospitalization Incident

The allegations relating to the August 9 Incident and the August 30 Hospitalization Incident are also insufficient to state a claim because they fail to allege facts sufficient to establish municipal liability under *Monell*.  During the August 30 Hospitalization Incident, one of the officers told Plaintiff that "due to the nature of the call and internal policies the only option they had was to take him to the hospital."  The SAC is insufficiently specific in describing what the challenged policy is or how it is unconstitutional.  To the extent the SAC is construed as a

7

challenge to an NYPD policy of taking emotionally disturbed persons to the hospital, the SAC fails to plead facts showing how such a policy is unconstitutional. *Cf.*, *Meyers v. Health & Hosps. Corp.*, No. 14 Civ. 7448, 2016 WL 2946172, at *11-12 (E.D.N.Y. May 18, 2016) (finding that the complaint in that case sufficiently alleged facts that the City's EDP policy is unconstitutional). The failure to adhere to a policy that is constitutional cannot form the basis of a *Monell* claim. *See Torcivia,* 17 F.4th at 363-364 ("If the seizure did not comport with the County's policy, which itself is constitutional as discussed above, then the County is not subject to *Monell* liability[.]"). Neither does the SAC allege that the policy causes employees to apply it in an unconstitutional manner, which "might itself be considered municipal policy." *Id.* at 364.

### B. Civil Rights Act

The SAC alleges that Defendant violated the Civil Rights Act when Plaintiff was discriminated against on the basis of his "race, color, and sex" during his interactions with the police. Claims for unlawful discrimination could arise under sections 1981, 1983, 1985 and 1986 of the Civil Rights Act. For the reasons discussed below, these claims are dismissed.

To state a claim under sections 1981, 1983 and 1985, a plaintiff must allege that he was discriminated against on the basis of some protected characteristic. *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (internal quotation marks omitted) ("To prevail on an equal protection claim, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."); *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (affirming the district court's holding that the defendant "failed to plead facts showing that the defendants acted with discriminatory animus, as required to state a claim under 42 U.S.C. § 1981 or 42 U.S.C. § 1985"). Liability under § 1986 is premised on a successful § 1985 claim. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088

(2d Cir. 1993); *accord Salu v. Miranda*, 830 F. App'x 341, 343 n.1 (2d Cir. 2020) (summary order).

The SAC fails to plead facts sufficient to establish that Plaintiff was detained or arrested on account of his "race, color [or] sex." The SAC makes general allegations of racial discrimination by the police, including that Plaintiff was the victim of "racial[] profiling" and that the officers assumed Plaintiff was guilty on account of his race. "Allegations of being singled out and targeted are conclusory and cannot be accepted at the motion to dismiss phase." *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (summary order) (internal quotation marks omitted). The SAC also references other discriminatory acts by the police, and attaches a list of eight "similar situations" of individuals who died as a result of interactions with the police. The SAC fails to plead any facts to support the inference that, on account of Plaintiff's race, police officers treated him as they did. *Morales*, 752 F.3d at 238 (affirming dismissal of the complaint because it "contains only conclusory allegations that the defendants violated Morales's rights because of their discriminatory intent and based on his race and color") (internal quotation marks omitted).

### C.    State Law Claims

The SAC is construed to assert causes of action arising under state and city statutes. The Court declines to exercise supplemental jurisdiction over these claims. Federal courts may exercise supplemental jurisdiction over state law claims that are related to federal law claims and arise from the same common nucleus of operative facts. *See* 28 U.S.C. § 1367(a). District courts may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When "a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'"

*Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *accord Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146 (2d Cir. 2020) ("Because the District Court properly dismissed [the federal] claims, the only claims over which it had original jurisdiction, it did not abuse its discretion by declining to exercise supplemental jurisdiction over [the state law] claims.").

## IV.  LEAVE TO REPLEAD

Plaintiff has been granted leave to amend on two prior occasions.  Because Plaintiff is pro se, he is given a final opportunity to replead the federal claims.  "Where a district court cannot rule out any possibility . . . that an amended complaint would succeed in stating a claim, a pro se complaint should not be dismissed without granting leave to amend at least once."  *Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020).  Even in cases involving pro se plaintiffs, however, "leave to amend need not be granted when amendment would be futile."  *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).

Plaintiff is advised that if he intends to pursue the City of New York as the sole defendant in this action, the new complaint must allege that the constitutional violations were caused by an official municipal policy or custom in order to state a municipal liability claim under Section 1983, and must allege facts showing how the policy or its consistent application is unconstitutional.  As to the alleged Civil Rights Act violations, the amended complaint must allege specific facts showing that the officers involved in the four incidents acted with discriminatory intent.  Finally, the amended complaint must provide sufficient detail to give rise to a reasonable inference that the May 9 Arrest was a false arrest (i.e., that the police acted without reason) and that the August 30 Post-Discharge Incident was an unlawful seizure (i.e., that Plaintiff was held against his will).  If Plaintiff chooses to add individual defendants but

does not know their names, he should name them "John Doe" or "Jane Doe." Plaintiff shall *seek leave* to file a Third Amended Complaint no later than **January 19, 2022** by mailing the *proposed* Third Amended Complaint to the Court's Pro Se Intake Unit at 500 Pearl Street, Room 200, New York, New York 10007, along with a letter explaining how the amended complaint addresses the deficiencies identified in this Opinion.

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**. Plaintiff may seek leave to replead as provided above. The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Pro Se Plaintiff.

The Clerk of Court is respectfully directed to close the motion at Docket Number 56.

Dated: December 21, 2021
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**